IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT W. ADIS, JR., | No. CIV S-05-1865-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | |
| Defendant. | |
| _____/ | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 23) and defendant's cross-motion for summary judgment (Doc. 26).

///

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Michael J. Astrue is substituted for his predecessor. The Clerk of the Court is directed to update the docket to reflect the above caption.

# I. BACKGROUND

Plaintiff applied for social security benefits on December 17, 2002.[2] In his application, plaintiff claims that disability began on November 10, 1998. Plaintiff claims he is disabled due to mental illness and retardation. Specifically, plaintiff states that he has been diagnosed with bipolar disorder, major depressive disorder, antisocial personality traits, cognitive disorder, mental retardation, psychotic disorder, and paranoia. He states that these impairments result in inability to concentrate, focus, learn, relate to others, control his anger and frustration, maintain normal thought processes, reason, and trust. He also complains of racing thoughts, excessive forgetfulness, severe mood swings, and excessive irritability. Plaintiff is a United States citizen born October 22, 1967, with a ninth-grade education.

### A.  Summary of the Evidence

The certified administrative record contains medical records from the University of California Medical Center in Sacramento from May 11, 1995, through February 1997 (CAR 219-54). These records relate to treatment for various physical ailments. Of note are records from May 11, 1995, concerning a head trauma. Plaintiff was brought to the hospital by ambulance following an assault to the head with an unknown object. Plaintiff was diagnosed with a basilar skull fracture, right maxillary sinus wall fracture, and an orbital fracture on the right. The records reflect that, at that time, plaintiff tested positive for amphetamine use.

Plaintiff was treated at Sacramento County Mental Health from June 1995 through July 1997 (CAR 180-209). Of particular note is a July 3, 1997, assessment in which the interviewer did not observe any psychiatric symptoms.

/ / /

/ / /

/ / /

---

[2]  Plaintiff filed a prior application for benefits on May 30, 1997. Plaintiff did not seek judicial review of the denial of that application, which is, therefore, not before the court.

On August 12, 1997, plaintiff was examined and evaluated by Travis H. Owens, Psy.D., at the request of the agency. Dr. Owens prepared a report (CAR 165-70), in which he offered the following summary:

> . . . Mr. Adis denies current suicidal ideation. He reported current use of alcohol. Information obtained from Mr. Adis regarding interpersonal relationships indicates that his ability to relate is slightly impaired. During the interview, he gave the impression that he was having slight difficulty interacting with his world and maintaining social functioning.
>
> There appeared to be no impairment in Mr. Adis' ability to participate in daily activities. His independent living skills are not impaired.
>
> Mr. Adis' abstract thinking appeared moderately impaired. His judgment appeared slightly impaired.
>
> Mr. Adis is unable to manage funds responsibly. Although Mr. Adis has the cognitive ability to handle funds, it is likely that he would mismanage their use for self-medication with alcohol.

Dr. Owens concluded that plaintiff has cognitive disorder, borderline intellectual functioning, and antisocial personality traits. He gave plaintiff a global assessment of functioning ("GAF") score of 61 out of 100.

On August 27, 1997, an agency consultative doctor prepared a mental residual functional capacity assessment (CAR 161-64). This assessment indicates that plaintiff is moderately limited in the following areas: (1) ability to understand and remember detailed instructions; (2) ability to carry out detailed instructions; (3) ability to maintain attention and concentration for extended periods; (4) ability to sustain an ordinary routine without special supervision; (5) ability to work in coordination with others without distraction; (6) ability to interact with the public; (7) ability to ask simple questions or ask for assistance; (8) ability to get along with co-workers; (9) ability to respond to changes in the work setting; and (10) ability to set realistic goals independently of others. Plaintiff was assessed as markedly limited in his ability to accept instructions and respond appropriately to criticism. In all other areas plaintiff was found not to be significantly limited.

///

On July 25, 1998, Julie Ann Stoll, M.D., performed a comprehensive psychiatric evaluation of plaintiff and prepared a report (CAR 275-78). Dr. Stoll offered the following functional assessment:

> The patient appears to have extremely severe difficulties affecting his ability to reason and to make personal, occupational, and social adjustments on the basis of a psychiatric diagnosis of psychotic disorder and mood disorder.
> 1. His ability to relate and interact with supervisors and coworkers is impaired because his thought process is completely tangential, and sometimes his answers make no sense.
> 2. His ability to understand, remember, and carry out an extensive variety of technical and/or complex job instructions appears to be extremely impaired on the basis of the above characteristics.
> 3. His ability to understand, remember, and carry out simple one- or two-step job instructions also appears to be severely impaired. When his memory was tested, he got one object out of three and had to be prompted to remember the other two.
> 4. His ability to deal with the public is probably impaired because his thought process is so off track to conversation.
> 5. His ability to maintain concentration and attention for at least two-hour increments appears to be impaired.
> 6. His ability to withstand pressures associated with an eight-hour work day appears to be impaired. He says he has been frustrated and angry after his accident because he can't perform the way he wants to.
> 7. His ability to handle funds in his best interest may be impaired due to his cognitive deficits.

Dr. Stoll diagnosed plaintiff as having provisional psychotic disorder with delusions, mood disorder with depressive features, and possible learning disorders. She assigned a GAF of 35.

Plaintiff was treated at Northgate Point RST from August 1999 through January 2001. Records from 1999 indicate a diagnosis of mental illness, paranoia, and mild depression. At this time, he was assigned a GAF of 45. Plaintiff was treated with increasing dosages of Zyprexa from 1999 through August 2000, at which time Paxil was added. On May 18, 2000, plaintiff was diagnosed with psychosis and assigned a GAF of 45. As of January 4, 2001, plaintiff's GAF remained 45.

/ / /

/ / /

Between November 2002 and October 2003, plaintiff was treated by Genesis, which is a mental health program provided by Loaves and Fishes. A note from April 21, 2004, indicates that, during the 2002 to 2003 time frame, plaintiff received four counseling sessions and that plaintiff was "experiencing paranoia and anxiety." The note also indicates that plaintiff had been diagnosed as schizophrenic.

On December 23, 2002, plaintiff was evaluated at Guest House, a Sacramento County Mental Health Plan provider (CAR 410-18). Plaintiff was diagnosed with major depression and assigned a GAF of 50. This diagnosis remain unchanged as of April 14, 2003.

On April 22, 2003, David C. Richwerger, Ed.D., prepared a report following his examination of plaintiff as the request of the agency (CAR 427-33). As to plaintiff's functioning at that time, Dr. Richwerger noted:

> The claimant lives in a shelter with a friend. The claimant states he does not sleep very well, but his appetite is okay. He takes care of his own personal needs. The claimant states he enjoys fishing and walking. He also likes football and boxing. He handles his own financial affairs. The claimant states he usually gets around via the bus. The claimant is able to move about alone. The claimant took the bus and walked to get to this evaluation. The claimant states he gets along a little bit with family and relatives. He does not interact much with friends and neighbors. The claimant states that on a daily basis he will go for walks.

Dr. Richwerger assigned plaintiff a verbal IQ of 67, a performance IQ of 78, and a full-scale IQ of 70. He diagnosed depressive disorder by history given and assigned plaintiff a GAF of 60.

On May 5, 2003, Rosemary Tyl, M.D., completed a mental residual functional capacity assessment at the request of the agency (CAR 449-52).[3] She opined that plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions. Dr. Tyl concluded that plaintiff was not significantly limited in any other area.

/ / /

/ / /

---

[3] Plaintiff's summary of the medical evidence does not include a discussion of Dr. Tyl's assessment.

Plaintiff continued his treatment at Guest House from May 12, 2003, through March 18, 2004. Treatment notes from May 12, 2003, May 23, 2003, June 30, 2003, July 16, 2003, August 13, 2003, September 12, 2003, December 8, 2003, January 14, 2004, and February 12, 2004, all indicate a diagnosis of moderate recurrent major depressive disorder without psychotic features. On March 18, 2004, plaintiff was diagnosed for the first time as bipolar. As to depression, the March 18th note indicates that plaintiff ". . . is still a little depressed but says that this is because his 'old lady' left him . . . ." At this time, plaintiff was assigned a GAF of 50.

### B.     Procedural History

Plaintiff's December 17, 2002, claim was initially denied. Following denial of his request for reconsideration, plaintiff requested an administrative hearing, which was held on May 7, 2004, before Administrative Law Judge ("ALJ") Antonio Acevedo-Torres.

In his June 18, 2004, decision, the ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and disability insurance benefits . . . and is insured for benefits through June 30, 2002;

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability;

3. The claimant's depressive disorder, antisocial personality traits, and possible borderline intellectual functioning and cognitive disorder are considered severe based on the requirements of the regulations;

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4;

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision;

6. The claimant has the residual functional capacity for work at all levels of exertion; he is limited to simple unskilled work;

7. The claimant is unable to perform any of his past relevant work;

8. The claimant is a younger individual between the ages of 18 and 44;

9. The claimant has a limited education;

///

|   |   |   |
|---|---|---|
| 10. | | The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case; |
| 11. | | The claimant has no exertional limitations; |
| 12. | | Considering the range of work at all levels that the claimant is still functionally capable of performing, in combination with his age, education, and work experience, and using section 204.00 of the Medical-Vocational Guidelines as a framework for decision-making, the claimant is not disabled; and |
| 13. | | The claimant was not under a disability . . . at any time through the date of this decision. |

Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not entitled to benefits. After the Appeals Council declined review, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In his motion for summary judgment, plaintiff argues:  (1) the ALJ improperly rejected the opinions of his treating physicians; (2) the ALJ improperly rejected his testimony as not credible without providing legally sufficient reasons for doing so; (3) the ALJ failed to consider all of his impairments in making a severity determination; (4) the ALJ erred in concluding that plaintiff's impairments did not satisfy the Listing of Impairments; and (5) the ALJ improperly applied the Medical-Vocational Guidelines ("Grids") in determining disability given plaintiff's non-exertional mental impairments.

**A.     Evaluation of Medical Opinions**

Plaintiff argues that the ALJ erred in relying on Dr. Richwerger's opinion in arriving at his decision that plaintiff's only limitation is to perform simple, unskilled work. Plaintiff contends this decision ". . . placed complete reliance on the opinion of . . . Dr. Richwerger who saw Mr. Adis only once . . ." and does not adequately account for the assessments of his treating medical providers, specifically Guest House, Genesis, and Sacramento County Mental Health.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

(9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

As to the limitations posed by plaintiff's mental impairments, the ALJ stated:

> From a psychological standpoint, the claimant is limited to simple, unskilled work. This assessment is based on the opinion of the consulting psychologist, David Richwerger, Ed.D., who noted that the claimant had the above-noted severe medical impairments with a GAF rating of 60. The claimant's verbal IQ was 67; his performance IQ was 78; and his full scale IQ was 70. Orientation was normal. His daily activities include household errands and shopping and he enjoys fishing, walking, football,

and boxing. He handles his own financial affairs. The doctor found that the claimant could perform simple and repetitive tasks and had the concentration, persistence, and pace to perform such tasks. He would have difficulty with detailed and complex tasks. He could maintain basic social functioning and cope with ordinary work stressors as long as he is doing simple and repetitive tasks. The claimant appeared to have difficulties in managing his own funds. The State Agency doctor's [Dr. Tyl] evaluation is generally consistent with the findings of Dr. Richwerger in terms of mental functional capacities. The claimant was noted to be capable of performing simple tasks, but there were problems with more sophisticated tasks. There were mild limitations in daily living and social functioning, as well as moderate limitations in concentration, persistence, or pace.

The ALJ then considered plaintiff's treating providers as follows:

> Dr. Richwerger's opinion is substantiated by the medical evidence of record. Treatment notes from the Sacramento County Mental Health . . . show that in December 2002 the claimant was diagnosed to have depressive disorder – recurrent. The GAF rating was 50. The claimant's reported symptoms included poor memory, difficulty concentrating, feelings of hopelessness, poor sleep, tendencies towards isolation, difficulty controlling his anger, and mood disturbance. A mental status examination in May 2003 showed that the claimant was recently clean and sober. His sleep and appetite were good. Speech was clear and eye contact was good. Auditory and visual hallucinations were denied. More recent mental examinations did not show significant difficulties in these areas. Medications were reported to be helpful in May and August 2003. mood was good in September 2003 and affect was bright. Energy was normal and memory was intact in February 2004. He was doing well on his medications in March 2004. Bipolar disorder, more depressed, was diagnosed. The claimant received counseling for paranoia and anxiety at GENESIS in the period from November 27, 2002 – October 20, 2003. The undersigned notes that medical findings of record have not recently been significant and a more restrictive residual functional capacity than noted above is not warranted. The claimant's medications were recently reported to be helping the claimant.

Contrary to plaintiff's assertion that the ALJ's conclusion that plaintiff's mental impairments only resulted in a limitation to simple, unskilled work is based solely on Dr. Richwerger's assessment, the foregoing clearly shows that the ALJ also relied on Dr. Tyl's evaluation. Further contrary to plaintiff argument, it does not appear that the ALJ rejected or otherwise discounted the findings and opinions of any of plaintiff's treating sources.

It appears that the basis for plaintiff's argument is that the ALJ mischaracterized the treating source records in his analysis. According to plaintiff, his treating physicians

concluded that he suffered from bipolar disorder, anxiety, major depression, and paranoia. Plaintiff has not, however, demonstrated how his characterization of the treating source records renders the ALJ's conclusion that plaintiff could do simple, unskilled work invalid. For example, plaintiff argues that a GAF rating of 50 "represents a serious impairment."[4] What plaintiff does not demonstrate is how a GAF rating of 50 precludes simple, unskilled work. A severe mental impairment does not necessarily preclude simple, unskilled work.

Plaintiff's reliance on Sanchez v. Apfel, 85 F. Supp. 2d 986 (C.D. Cal. 2000), is misplaced. Plaintiff appears to argue that this case stands for the proposition that a low GAF score equates to the inability to perform simple, unskilled work. To the contrary, the court in Sanchez concluded that the plaintiff, who had a GAF of 30, who demonstrated self-destructive behavior, and who had attempted suicide, had a severe mental impairment. Thus, the issue in Sanchez was whether the plaintiff's mental impairment was severe. The court concluded that the ALJ had erred in rejecting the treating source opinions on the sole ground that there was no objective evidence to support their conclusions. By contrast, the issue in the case at bar is whether plaintiff's severe mental impairment precludes simple, unskilled work. Additionally, unlike Sanchez, the ALJ in this case did not reject the treating source opinions but, rather, concluded that they supported the agency doctors' findings.

Based on a review of the entire record, the court concludes that the ALJ properly considered the various medical opinions.

**B.    Credibility Finding**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903

---

[4] The ALJ recognized as much in concluding that plaintiff's mental impairments were severe.

F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

As to plaintiff's credibility, the ALJ stated:

> The claimant testified that he has had a depressive disorder since 1995 when he was assaulted. He takes three medications for this problem. He sleeps 11-12 hours during the night. He has no difficulties with walking, standing, sitting, and lifting. He lives with his girlfriend in a van. His activities include fishing, talking, babysitting for his family's kids, and spending time with his girlfriend. He hears voices and is depressed. To the extent that the claimant expressed severe, disabling mental problems precluding the above-noted residual functional capacity, he is found to be not credible. Such allegations are greater than his condition would be expected to produce and are not substantiated by the medical findings of record or the creditable opinions of examining or reviewing physicians.

As plaintiff notes, all but the last two sentences of the above excerpt merely summarize plaintiff's hearing testimony. Thus, the ALJ's determination that plaintiff's testimony was not credible applies only to testimony regarding "disabling mental problems." As to such testimony,

the ALJ concluded that plaintiff was not credible because: (1) the allegations are greater than his documented medical conditions would be expected to produce; and (2) the allegations are not substantiated by the medical record.

The court finds that the ALJ's credibility analysis in this case is flawed. Specifically, the ALJ did not identify the testimony found to be not credible. Further, the ALJ did not specify which evidence undermined the plaintiff's credibility. Rather, the ALJ made only the general finding that plaintiff's testimony concerning disabling mental problems was not credible. This is in sufficient. See Lester, 81 F.3d at 834.

Where the ALJ improperly rejects the plaintiff's testimony as not credible, and the plaintiff would be disabled if the testimony had been credited, then the testimony must be credited as a matter of law. See id. Thus, the question is whether plaintiff would be disabled if his testimony regarding his mental problems had been credited by the ALJ in this case. A review of the hearing transcript reflects that plaintiff testified to the following limitations:

1. Plaintiff hears voices;
2. Plaintiff's medications make him sleepy;
3. He has problems with communication and concentration;
4. He gets dizzy when trying to concentrate;
5. Plaintiff gets severe headaches; and
6. Plaintiff would have to cut back on his recommended dosages of medication if required to get up for a job every day.

In light of plaintiff's statements concerning his daily activities, which include fishing, walking, playing football, unassisted shopping, and doing light household chores, the court cannot say that plaintiff would be disabled as a matter of law if his testimony had been credited. Specifically, it is not clear whether plaintiff would be precluded from simple, unskilled work.

///

///

Because the ALJ failed to specify the testimony he found to be not credible, a remand is appropriate to provide the ALJ an opportunity to make more specific credibility findings. The court does not credit the testimony as a matter of law for the reasons discussed above. On the current record, this is a determination best made by the ALJ on remand.

### C. Severity of Plaintiff's Impairments

In this case, the ALJ concluded that plaintiff has the following severe impairments: depressive disorder, antisocial personality traits, and possible borderline intellectual functioning and cognitive disorder. Plaintiff argues that the ALJ failed to include his bipolar disorder, major depression, anxiety, and paranoia in his description of plaintiff's severe impairments.

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[5] In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory

---

[5] Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

14

findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

As to bipolar disorder, which was diagnosed by Guest House on March 18, 2004, the ALJ acknowledges the diagnosis in the hearing decision. He does not, however, reject the diagnosis for any reason. Additionally, Guest House diagnosed major depression, but the ALJ does not offer any rationale for not describing plaintiff's depression as major. Similarly, Genesis diagnosed anxiety, and both Genesis and Northgate Point RST diagnosed paranoia, but the ALJ did not provide any rationale for not including these problems in his description of plaintiff's severe mental impairments.

A remand is appropriate to provide the ALJ an opportunity to consider these diagnoses and provide a rationale if they are not considered severe in combination with plaintiff's other mental impairments.

### D. Applicability of Listing No. 12.05

Plaintiff argues that the ALJ erred in concluding that his impairments did not meet or medically equal the impairment set forth in Listing No. 12.05.[6] As to the applicability of Listing No. 12.05, the ALJ stated: ". . . The record fails to show that the claimant's IQ scores of 70 or below were that low before he was age 22, as required by listing 12.05."

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

---

[6] Plaintiff does not argue that the ALJ erred in concluding that plaintiff's impairments failed to meet Listing No. 12.04.

Plaintiff is correct in observing that Listing 12.05 requires that the evidence demonstrates or supports an onset of mental retardation prior to age 22. Contrary to the ALJ's assessment, the record does in fact support an onset date prior to age 22. Dr. Richwerger observed:

> . . . The claimant appears to have a borderline level of cognitive difficulties, but it is unclear whether the claimant has had these cognitive difficulties all his life or whether they are worse since his alleged head trauma.

At best, the record in this case is ambiguous as to whether plaintiff's cognitive difficulties existed prior to age 22. Because the ALJ did not take any steps to resolve this ambiguity, the court cannot find that Listing 12.05 is necessarily inapplicable.

A remand is appropriate to provide the ALJ with the opportunity to further develop the record as to the onset date of plaintiff's cognitive difficulties and whether Listing 12.05 applies in this case.

### E.   **Applicability of the Grids**

The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a

claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.[7] See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

///

///

---

[7] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

In this case, as discussed above, the ALJ erred with respect to: (1) plaintiff's credibility; (2) analysis of the severity of plaintiff's impairments in combination; and (3) applicability of Listing 12.05.  Because the ALJ may conclude on remand that plaintiff has non-exertional impairments precluding application of the Grids, it is premature at this point to address the ALJ's current Grids analysis.

### IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is granted;
2. The Commissioner's cross motion for summary judgment is denied;
3. This matter is remanded for further proceedings consistent with this order; and
4. The Clerk of the Court is directed to enter judgment and close this file.

DATED:  August 29, 2007.

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE